## 11859

### STATE v. OLASOV

#### (130 S. E., 514)

1. TURNPIKES AND TOLL ROADS—GRANTEE, HOLDING UNDER CONTRACT RESERVING RIGHT TO DEDICATE ROAD UPON WHICH HIS PROPERTY FRONTS, COMMITS TRESPASS ON USING ROAD WITHOUT PAYMENT OF TOLL AFTER CONVEYANCE TO TURNIPIKE COMPANY.—Where grantor had conveyed highway to turnpike company, grantee of land along way conveyed, who held under contract reserving right to dedicate road to public use or convey to any person, attempting to use highway in defiance of conditions requiring payment of toll after notice, *held* to commit trespass upon land.

2. TURNPIKES AND TOLL ROADS—GRANTEE, HAVING RIGHT OF INGRESS AND EGRESS TO ROAD BEFORE INCORPORATION OF TURNPIKE COMPANY, WAIVES RIGHT THERETO BY JOINING IN COMMON PURPOSE OF ESTABLISHING TURNPIKE ROAD.—Grantee, who had right of ingress and egress from lot to road before incorporation of turnpike company, waived right thereto by joining in common purpose of establishing turnpike road for use of which all persons are required to pay toll.

Before SHIPP, J., Charleston, March, 1925. Affirmed.

Benj. Olasov was convicted of trespass on lands of another after notice and he appeals.

The following is the opinion of the trial Court:

"This is an appeal from the Magistrate's Court in St. Andrews Parish, Charleston County, Magistrate Henry Struhs, presiding. The defendant was arrested under a warrant charging him with trespass after notice, under Sec-

tion 81, S. C., Code of Laws (1922), Vol. 2, and tried before Magistrate Struhs and a jury on February 24, 1925, the trial resulting in a verdict of guilty, whereupon the defendant was sentenced by the Magistrate to pay a fine of $20 or to serve 20 days. The defendant served notice of appeal to this Court on the following grounds:

"(1) That the Magistrate erred, it is respectfully submitted, in refusing to direct a verdict in favor of the defendant upon the grounds submitted to the Magistrate at the time of the making of a motion for the direction of a verdict, in that it appeared (a) that the statute incorporating the Folly Roadway Company contains no provision making it mandatory for any one to pay toll, and provides no penalty or punishment of any kind for any one failing to pay such toll; (b) that it appears from the uncontradicted written evidence that the defendant was entitled to use the road in question under his contract and deed received by him from the Folly Beach Corporation, free of charge, and that the Folly Roadway Company, which claimed title to the road in question under a deed from the said Folly Beach Corporation, acquired no better rights than those of its predecessor in title, and that the defendant having had the right to use the said road at the time of the conveyance of the same by the Folly Beach Corporation to the Folly Roadway Company, he had a like right to use the same after such conveyance.

"(2) That the verdict rendered by the jury in this case was against the law as charged by the Magistrate, and against the evidence, and against the weight of the evidence in the case.

"(3) That the jury should have rendered a verdict in favor of the defendant, inasmuch as the State failed to prove beyond a reasonable doubt that the defendant had committed any offense, as charged in the warrant, in that it appeared from the uncontradicted testimony and the written documents offered in evidence that the defendant had

the right to use the road in question under a contract and deed from the Folly Beach Corporation, under whom the Folly Roadway Company claimed title to the road, and that the defendant, therefore, could not have committed any trespass upon a road which he had the right to use under a deed from the corporation who owned the road at the time.

"The appeal was argued before me in the March term of the Court of General Sessions for Charleston County, by counsel for the defendant appellant and for the State, and I have carefully considered all the grounds of appeal, and am of opinion that the same should be overruled, and the appeal dismissed.

"The facts are for the most part undisputed. The defendant became the owner of property on Folly Island by deed from the Folly Beach Corporation, which at the time of the execution of the deed owned a road which connected Folly Island with James Island, being some six miles or more in length. The defendant offered in evidence a deed to one of his lots, dated the . . . . . . . . day of . . . . . . . .,. 1922, and testified that the deeds to the remainder of this property on the island were similar, and contained like conditions. Among the reservations, covenants, conditions, restrictions, and limitations contained in these deeds was the following:

" 'A. Nothing herein contained shall be construed so as to constitute a dedication of any road, avenue, street, lane, beach or park, now or hereafter shown on the map of said premises, or any other map, the fee-simple title to all of said roads, avenues, streets, lanes, beaches or parks being hereby expressly reserved unto the grantor, its successors and assigns, together with the exclusive right to fix the grade thereof, and to grade, change the grade, and regrade any of the said roads, avenues, streets, lanes, breaches or parks, to change the location of or to close or partly close any of the same, with the further right to dedicate to the public use or to convey or grant to any person or persons,

corporations or municipality, all its right, title and interest in and to all such roads, avenues, streets, lanes, beaches or parks, or any rights or easements therein: Provided, however, that the exercise of such right by the grantor shall not materially interfere with the convenient ingress and egress to and from the lot or lots hereby conveyed: Provided that, prior to any disposition thereof inconsistent with such .use, the grantee hereunder shall have the full and free use of the surface of said roads, avenues, streets, lanes, breaches or parks as such for all lawful purposes subject, however, to all of the reservations and rights herein, and hereby expressly reserved unto the grantor.'

"The defendant also introduced in evidence the written contract of sale of the lot, dated the 4th day of December, 1919, in which the same language appears. Under this deed, and particularly under the language quoted above, the defendant claimed a right of way over the road by express grant, and also claimed an easement of necessity. Under my construction of the said paragraph A of the deed, quoted above, whatever right of way or easement the defendant had was covered by, set out in, and limited by, the language of that paragraph.

"In March, 1923, an Act of the General Assembly (33 Stat. at Large, p. 557) was approved by the Governor, incorporating the Folly Roadway Company, as a body politic and corporate, 'for the purpose of constructing, maintaining, and operating a toll and turnpike road from a point on James Island, in the County of Charleston, to Folly Island in the said County, over the route of the existing road, causeways and bridges now connecting said islands, with the right to charge tolls on said route as fixed by law, and to erect one or more gates on said route for the collection of same.' The tolls were fixed by the same Act as follows:

" 'Sec. 5. That the maximum toll permitted to be charged by the said corporation on the said road or bridges shall not exceed 20 cents per person, 12 years of age or over for the

round trip; with the maximum charge of three ($3.00) dollars for non-transferable commutations ticket per calendar month, and a proportionate toll to be charged trucks and busses.'

"On April 4, 1923, after the passage of this Act, Folly Beach Corporation, by deed in evidence, conveyed the road and adjacent holdings to the Folly Roadway Company, who, thereafter, took control of the road, erected a toll gate at a point on James Island, and began to charge tolls, at the maximum rates provided by the General Assembly, to all who passed through the gate. The defendant testified that he paid tolls until February 6, 1925; that on that day he had not paid toll, and had been spoken to by the gatekeeper as he returned to the city from the island, and notified that he could not go through the gate unless he paid toll, and he admitted that on the next day he had driven through the gate, past the gatekeeper who ordered him to stop, and had gone over the road to the island without paying the toll.

"He also admitted in his letters and in his testimony that he had attended a meeting at the Chamber of Commerce in Charleston, before the organization of the Folly Roadway Company, and that at that meeting he had agreed with all the others interested in the organization of the company that every one, including himself, should pay tolls; and he admitted that he had so paid toll for nearly two years before he refused to pay on February 7. It also appeared that the new company, the Folly Roadway Company, had borrowed about $77,000 shortly after the transfer of the road, which was indorsed by the officers of the company personally, and which had been spent at once on the road; that in tolls for the year and a fraction that they had operated the road, they had collected approximately $46,000 in tolls, which had been paid on the above indebtedness, paying interest, and in current upkeep of the road; and that the corporation still owed about $46,000 on that indebtedness.

The defendant's deed specifically provides as follows:

" 'Provided that, prior to any disposition thereof inconsistent with such use, the grantee hereunder shall have the full and free use of the surface of said roads, avenues, streets, lanes, beaches or parks as such for all lawful purposes, subject, however, to all of the reservations and rights herein, and hereby expressly reserved unto the grantor.'

"In my opinion, this qualifies any easement or right of way defendant got under the other provisions of the deed, and the conveyance of the road to the Folly Roadway Company on April 4, 1923, for its operation and maintenance under the terms of the Act of the General Assembly creating that company, was such a disposition thereof inconsistent with a full and free use of the road by the defendant. Paragraph A, set out in full above, grants to the defendant at the most a revocable license or right of way, and this was revoked or terminated, by the terms of the deed, when the road was conveyed to the Folly Roadway Company. Thereafter the defendant was under the duty to pay the toll lawfully charged in order to pass over the road. His free easement or license, granted in the deed, subject to this limitation, was at an end, and when he went over the road on February 7, 1925, and refused to pay the toll, he was a trespasser after notice; the notice being specifically admitted by the defendant.

"It also seems to me that the defendant had, prior to the trespass for which he is charged in this action, lost any right to a free easement or right of way or license as against the Folly Roadway Company by his actions in the meeting in the Chamber of Commerce, his agreement with all the others to pay the tolls to the new corporation, and by paying the tolls on every occasion over a period of nearly two years before he objected and sought to assert his previous rights. His conduct, representations, and acquiescence had effectually waived those rights against the Folly Roadway Company, if he had any, and, in a civil action between the com-

pany and the defendant, the showing here made would have compelled the holding that, even if Olasov had the rights which he claims at one time, he is now estopped to assert them against the Folly Roadway Company. If this be true, he was a trespasser when he refused to pay the toll.

"On both these grounds, I am of opinion that the grounds of appeal should be overruled, and the appeal dismissed."

*Messrs. Shimel & Rittenberg* and *Waring & Brockington,* for appellant, cite: *Penalty limited by terms of statute:* 26 R. C. L., 1405; 38 Cyc., 404, note 29. *Civil remedy for failure to pay toll:* 38 Cyc., 398. *Right of public in toll road:* 26 R. C. L., 1396; 38 Cyc., 378, note 30; 73 S. C., 24; 124 S. C., 302; 117 S. E., 599. *Use of easement by necessity not trespass:* 38 Cyc., 1177, note 53. *Trespass under claim of title not criminal:* 87 S. E., 31; 83 S. C., 1011. *Right to close roadway not reserved:* 33 S. C. L., 156; 9 S. C. L., 98; 18 C. J., 263. *Easement by implication:* 2 Washb. on Real Property, 6th Ed., 276. *Abandonment of easement:* 2 Washb. on Real Property, 6th Ed., Sec. 1275; 19 C. J., 949.

*Messrs. James Allan, Solicitor* and *Robert McC. Figg, Jr.,* for respondent, cite: *Trespass after notice:* Crim. Code, 1922, Sec. 81. *Intention immaterial:* 35 S. C., 266. *Qualified dedication to public:* . 124 S. C., 302. *Tolls:* 123 U. S., 288; 65 Pa., 205; 167 Pa., 582; 28 L. R. A., 458. *No penalty named in statute:* 167 Pa., 582; 28 L. R. A., 458. *Easement by necessity:* 9 R. C. L., 768 et seq.; 2 McC., 445; 8 Rich., 158. *Abandonment of easement:* 9 R. C. L., 815; 114 S. W., 317; 22 L. R. A. (N. S.), 880; 51 Md., 470; 5 Gray., 409; 84 Me., 34; 71 Atl., 141. *Established rights affected by exercise of police power:* 119 U. S., 543; 199 U. S., 473; 123 U. S., 288.

November 16, 1925.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by his Honor, Judge Shipp, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY concurs.

MESSRS. JUSTICES COTHRAN, MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur in result.

MR. JUSTICE COTHRAN (concurring): I concur in the result of this case upon the following grounds:

1      While unquestionably the turnpike company has dedicated the highway to the public and the easement is a public easement and not private property, the turnpike company still retains the fee-simple title to the land. The public has an easement to use the road upon the payment of tolls provided for in the Act incorporating the turnpike company; that is, the public has a qualified easement. A person, therefore, who attempts to use the highway in defiance of and in breach of that condition, after notice, commits a trespass upon the land of another after notice.

2      Even if the defendant had the right of ingress and egress from his lot to the road before the incoporation of the turnpike company, he has waived his right thereto by joining in the common purpose of establishing a turnpike road for the use of which all persons are required to pay toll.

The other matters referred to in the decree of Judge Shipp have not been considered and in my opinion should not be considered adjudged by the judgment of this Court.

MR. JUSTICE MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.